PLUMMER v. TWO HUNDRED TONS OF RAILS et al.

(District Court, W. D. Washington, N. D. December 14, 1906.)

No. 3,290.

SHIPPING—CONTRACT GIVING LIEN ON CARGO FOR DEMURRAGE—VALIDITY.

Certain railroad materials were shipped on a chartered vessel from Seattle to Nome, Alaska, consigned to the charterer. Owing to his inability to obtain lighters to discharge such cargo, the ship remained at Nome until a claim for demurrage accrued under the charter, and was finally compelled by the close of the season to bring such cargo back to Seattle. By agreement between the master and the charterer it was there discharged to remain subject to the vessel's lien for demurrage. In a suit brought to enforce such lien, a corporation, of which the charterer was president and general manager, appeared as claimant and set up title to the property, and that it had paid the freight in advance to the charterer, but, the bill of lading on which the shipment was made did not disclose such

ownership, nor was it known to the owners or master of the vessel; claimant's vendors being named as the consignors. *Held,* that the lien was valid, having been given by the owner of the legal title, and also valid if he be regarded as the general agent of claimant, and claimant as the owner, since it was through his default as such agent that the demurrage arose.

[Ed. Note.—For cases in point, see Cent. Dig. vol, 44, Shipping, § 597.]

In Admiralty. Suit in rem against part of a cargo, by the owner of a chartered ship, to collect demurrage and recompense for necessary disbursements. Heard on general and special exceptions to the libel. Exceptions overruled, and the demurrage claim allowed.

William H. Brinker, for libelant.

Leroy V. Newcomb, for claimant.

HANFORD, District Judge. This is a suit by the managing owner of the ship Occidental in rem against part of a consignment of railroad materials, to collect demurrage claimed for detention of the ship at the port of discharge, and for reimbursement for expenditures alleged to have been made by the libelant for and on account of the charterer, who was also the consignee of the cargo. The ship made a voyage from Seattle to Nome, pursuant to a charter party containing a time limitation for duration of the voyage to Nome and return to Seattle, and these railroad materials were carried to Nome as part of a general cargo, and were brought back to Seattle because the consignee failed to obtain lighters at Nome for transportation of this part of the cargo from the ship's side to a landing place on the beach. After waiting until there was danger of being shut in for the winter, if he delayed departure for a longer time, the captain of the ship informed the consignee of his intention to return to Seattle with that part of the cargo which had not been discharged, and demanded payment of demurrage for overtime provided for in a clause of the charter party. Being unable to meet the demand for demurrage, the consignee made an agreement with the captain, whereby, in effect, he pledged the cargo remaining in the ship for payment of any balance which should be due on account of demurrage after applying the net proceeds expected from the sale of a quantity of coal which had been discharged from the ship. After the arrival of the ship at Seattle, an additional agreement was made between the captain and the consignee to the effect that the railroad materials should be unladen and stored without prejudice to any right of the shipowner to hold the same for the unpaid demurrage, and it was unladen and stored pursuant to that agreement.

The claimant is a corporation, and by general exceptions to the libel it questions the sufficiency of that pleading, and disputes the jurisdiction of the court, and by special exceptions, styled a "plea," asserts ownership of the property, and that it prepaid all freight charges for transportation thereof, and delivery at Nome, and that freight was not earned because of nondelivery at the port of destination; and it disputes the right of the libelant to claim a lien on its property for any sum which the charterer may personally owe, and denies that he had lawful authority to subject the property to a lien for his personal debt by pledging it. The claimant's title, as set forth in the special exceptions, is deraigned by purchase from W. D. Hofius & Co. A bill of lading,

signed by the captain, however, is attached to the exceptions as an exhibit, and by reference to it and allegations in the exceptions it is identified as the bill of lading issued when the consignment was received by the ship for transportation to Nome. This document shows that W. D. Hofius & Co. were the consignors, and the carrier was to deliver the property at Nome to the charterer or his assigns. Payment of the freight money is alleged to have been made to the charterer, and it is also alleged that the charterer was, at the time of the shipment, president and manager of the corporation, which is now attempting to repudiate his authority to bind it by the contracts which he made in his own name as the ostensible owner of the property. The exceptions also allege that the board of trustees of the corporation made an agreement with the charterer for the transportation of the property to Nome, pursuant to which it was delivered to him for shipment, and the freight money paid to him, and that he wrongfully caused the bill of lading to be issued to himself as consignee, and that the claimant did not know that he had done so, at the time when it was done, and remained in ignorance of that fact until after the ship had sailed away on her voyage to the north. It is not alleged nor contended that either the captain or any owner of the ship was cognizant of any interest in, or title or claim to, the property which the claimant may have had, at the time of the shipment, or at any time previous or subsequent until its claim was filed in this suit.

The case has been argued and submitted on these exceptions, with the understanding that the merits of the whole controversy, with respect to the claim for demurrage, are set forth with sufficient fullness to enable the court to finally adjudicate that part of the case.

The argument made in behalf of the claimant does not indicate any ground for doubting the jurisdiction of the court, and I have not discovered any in my independent researches. The only supposed defect in the averments of the libel is failure to itemize the expenditures for which reimbursement is claimed. These general exceptions appear to me to be without merit, and they are overruled.

The claimant's argument on the merits ignores entirely the most important facts in the case, although they are set forth candidly in the special exceptions, and ignores the elementary principles of law upon which the decision must rest. It is but a zealous effort to prevail upon certain propositions which are not applicable. The decision of the court is grounded upon the following propositions:

1. The claimant did not acquire the legal title to the property, because, instead of making delivery to it, the vendors delivered the property to the carrier, and they are named as the consignors in the bill of lading, which is the documentary evidence of the transfer of title, and the charterer of the ship is named as the consignee. Therefore by this document the legal title was transferred to and became vested in the charterer.

2. As a consequence of the payment of the purchase price, and the freight money by the claimant, there was a resulting trust, and it became the equitable owner of the property.

3. The shipowners, and their agent, the captain, having no knowledge of the claimant's equitable rights, and being innocent of knowing-

ly aiding the consignee in the perpetration of a fraud, had a right to make the contracts which were made with him; he being the legal owner, and ostensibly the real owner, and having possession of the bill of lading.

4. The contracts are binding upon the claimant for an additional reason, viz.: The consignee, being at the time of the transactions the president and manager of the corporation, was clothed with the authority of a general agent of said corporation, that is, the claimant, and with respect to its superior equitable rights the acts of the agent in contracting for the shipment of the property, and in the efforts which he made to avert a loss to the claimant of the amount of the demurrage claimed, and his omission to provide for the landing of the property at Nome, were the acts and omissions of the principal.

5. By treating the consignee as the agent and bailee of the claimant, instead of owner of the property, the claimant cannot strengthen its position, for, in that view of the case, a lien attached to the undelivered part of the cargo for demurrage, because the detention of the ship was occasioned by the default of the claimant through its agent, the consignee, in his failure to secure lighters for the transportation of the property from the ship to a landing place.

6. The claimant cannot justly disclaim knowledge of any of the transactions. This is so because its agent was at all times well informed as to all the details of his own doings, and the law imputes his knowledge to his principal.

By the final decree to be entered, the amount of demurrage sued for will be allowed, with interest at 6 per cent. from the 20th day of December, 1905. The libelant's demand for alleged disbursements cannot be finally adjudicated now, for the reason that sufficient facts have not been set forth in, nor admitted by, the exceptions. As to this part of the case, the claimant may take leave to file an answer.